# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Plaintiff, )<br>v. )<br>)<br>CLINT BALL, )<br>)<br>Defendant. ) | Criminal Action<br>No. 04-03056-05-CR-S-RED |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant has filed Motions to Suppress in which he alleges that all evidence seized at his residence and from his vehicle should be suppressed. The United States filed its responses. The matter was set for an evidentiary hearing, which was held before the undersigned on July 11, 2005. The defendant was present with counsel, Donald Cooley, and the United States was represented by Kimberly Weber Dean, Special Assistant United States Attorney.

In his Motion to Suppress Evidence Seized in Warrantless Vehicle Search, defendant contends that the warrantless search of his vehicle was unlawful because it was not a search incident to arrest, defendant was not observed to have violated any traffic laws, the search was without consent, and it occurred after defendant and the vehicle had been removed from the scene. He contends that the search of his vehicle at his residence resulted in the seizure of a cell phone, police scanner, and a small green plastic cannister. It is his assertion that the cell phone was further searched by recovering its internal phone book and notepad; that the scanner was removed from the

1

car; and that the cannister was opened.

The government asserts that, prior to defendant's arrest on March 26, 2004, law enforcement officers had been investigating defendant and co-conspirators Eric Fujan and John Harris, and possessed reliable information regarding their involvement with methamphetamine. The government contends that Fujan was arrested on March 25, 2004, with approximately two pounds of methamphetamine. Fujan advised that he had received approximately five pounds of methamphetamine and that 2 ½ pounds was delivered to Harris in exchange for $31,000. He stated that Harris was purchasing the methamphetamine for defendant. Through investigation, it was determined that the buyer was defendant. The government further asserts that a successful controlled delivery of contraband was effectuated on March 26, 2004, from Fujan to Harris, and Harris was arrested. He advised that the methamphetamine was intended for defendant, and he agreed to facilitate a controlled delivery to him at a Wal-Mart Super Center in Springfield, Missouri. Officers observed defendant arrive at the location. It is contended that he overheard law enforcement identify him and his vehicle over a police scanner, that defendant then told Harris to leave the area, and that a traffic stop was then initiated and defendant was arrested for attempt to possess with intent to distribute methamphetamine. The government asserts that, due to the time constraints inherent for a successful controlled delivery of contraband, there was not time to obtain a search warrant for the vehicle. It is contended that the officers possessed probable cause to believe that defendant was engaging in criminal activity and that his vehicle contained evidence subject to seizure. Defendant has filed a reply in which he objects to the government's position.

In the Motion to Suppress Evidence, it is defendant's contention that the affidavit in support of the search warrant that was executed on his residence on March 26, 2004, did not provide a

2

substantial basis that contraband or evidence of criminal activity would be found there. He also contends that the affidavit contained material misstatements of fact, as well as omissions of material facts that were knowingly made.

The government contends that the warrant was supported by probable cause, and that even if it were not, the good faith exception under United States v. Leon, 468 U.S. 897 (1984), would apply. Defendant has filed a reply in which he objects to this argument.

The government's witness was Richard Gene Wymer, who is a Special Agent with the Drug Enforcement Agency ["DEA"]. On March 26, 2004, he became aware of defendant's involvement with a drug conspiracy. The officer got this information from Eric Fujan and John Harris, and he included it in his application for a search warrant to search defendant's residence. Conversations had been recorded between Fujan and Harris, to deliver approximately two pounds of methamphetamine to Harris, and then to defendant. At the time other law enforcement officers were participating in the controlled delivery, Agent Wymer was at the DEA office, preparing the affidavit for the search warrant. He included statements from Fujan and Harris regarding the controlled delivery to defendant. He also did some independent investigation, which he included in the application. After the search warrant had been executed at defendant's residence, Harris made taped telephone conversations with defendant to try to set up a controlled delivery at an alternate location. He planned on meeting defendant at the Wal-Mart on South Glenstone in Springfield, Missouri, for a controlled delivery. DEA officers set up surveillance with the Springfield Police Department to help with the arrest once delivery was made. They were still conducting the search at defendant's residence, which is why the delivery was set up at Wal-Mart. At some point, defendant arrived at Wal-Mart, and Harris was in a vehicle parked in the lot. There was another subject, Kelly

3

VanWinkle, who pulled up next to John Harris and said something to the effect that "they're listening to us . . . ." [Tr. 8]. John Harris informed the officers of this. It was discovered later that they had scanners and were listening to the law enforcement talking. It appeared, after some circling around, that Harris and VanWinkle, who were in separate vehicles, decided to leave the parking lot. The officers' intention was to arrest defendant because they determined that a large portion of the methamphetamine coming in from this organization was being sold to him. The officers believed that his vehicle might contain from $30,000-$32,000 to be used for the purchase of methamphetamine.

Defendant left the parking lot and was not stopped until he reached Glenstone, north of Battlefield. Agent Wymer did not effectuate the stop, but it was his decision that defendant was to be arrested based on the information he had acquired over the past several days. Defendant was arrested, and was searched. Agent Wymer testified that he quickly searched the vehicle, incident to the arrest, at the scene. To ensure his own safety, he searched the passenger area, where he observed a police scanner, a cell phone, and a small container. He then drove the vehicle to defendant's residence, and completed the search there.

On cross examination, Agent Wymer testified he was not at the scene of the attempted controlled delivery between Fujan and Harris, but otherwise, he was present at the events about which he testified. He was at defendant's residence executing the search warrant, when the transcribed conversation occurred between Harris and defendant. As far as he was aware, this is the only conversation between the two that was transcribed. The information he relied on to arrest defendant was the conversation between him and Harris, and the interview with Harris when he was arrested, where Harris said he was suppose to take the drugs to defendant's residence. The officer

4

agreed that in the recorded conversation, there was nothing said about anyone taking any money anywhere. Agent Wymer testified, however, that it was his experience that no one actually says the word "money," or "methamphetamine," when they are discussing drug transactions. [Tr. 17]. From the conversation and his experience, he inferred that the exchange of drugs for money was what was to transpire.

Regarding the search of defendant's vehicle, when he got into defendant's vehicle, there was a police scanner on the floorboard. It was turned on, and he could hear the Springfield Police Department. He searched the front passenger compartment and looked in the back to make sure no one was hiding in the vehicle. They had information that defendant had weapons in his house and carried weapons with him, so he needed to make a quick search on the spot for safety reasons. He collected items on the floorboard, put them on the seat, and conducted a further search at the residence. He also opened a small container, which, when he opened it up, looked like it contained methamphetamine or some other drug, so he submitted that as evidence. He thinks in his report that he stated the items he found, but doesn't think he delineated that he conducted two searches. He searched the cell phone numbers at the residence. It is the officer's contention that this search was a search incident to the arrest.

On redirect examination, the witness testified that it was at the most thirty minutes from the time defendant was stopped until the officer was able to get to defendant's residence and continue the search. He stated that he did not try to obtain a search warrant because he needed to get back to the search at the residence, and he wanted to get the vehicle to a safe place. He thought it was important to search the cell phone at that time because, in his experience, the numbers that were on the phone close in time to the delivery could have disappeared and/or the battery could have died.

5

He didn't want to lose the information on the phone.

On recross examination, Agent Wymer admitted that defendant was under arrest and had no access to the cell phone. He reiterated that he wanted to get the numbers because, depending on the number of calls defendant received, they could be deleted. He admitted that the search of the phone was not made at the time of the arrest or at the scene of the arrest, but rather, about 30 minutes later at the residence.

Regarding the affidavit in support of the search warrant, Agent Wymer testified that he did not include the information that Fujan had over $6,000 when he was arrested because he did not think that was relevant to the search of defendant's house. He included information that Fujan cooperated on March 25 and March 26. He stated that he was not involved in the first interview, but he admitted that he knew that Fujan was high on methamphetamine at that time, and it probably wasn't a good time to interview him. He knew that Fujan wasn't making a lot of sense, but he did not include this in his affidavit. He denied that the interview was discontinued because Fujan was being evasive and dishonest. Agent Wymer testified that it is not unusual that the first story told is not the most truthful in this kind of situation. He agreed, however, that the fact that Fujan was not being forthcoming and seemed high on methamphetamine was not included in the affidavit. The officer acknowledged that the affidavit did not mention who all the methamphetamine was delivered to, and did not reference other drug distributions with other people. The officer reiterated that it is common that individuals do not openly state that they are going to purchase drugs in a conversation. At the interview where Agent Wymer was present, Fujan said that he knew from Harris that the methamphetamine was going to defendant, and that the last few times he delivered it, the deliveries were close to defendant's residence.

6

Case 6:04-cr-03056-RED   Document 196   Filed 08/12/05   Page 6 of 12

On cross examination, the witness testified that there was nothing in the affidavit that is false or misleading, or that was intentionally omitted.

Turning first to defendant's motion to suppress evidence seized from the search of his vehicle, "[t]he 'automobile exception' to the warrant requirement of the Fourth Amendment authorizes warrantless searches of automobiles where the officers have probable cause to believe that contraband or evidence of criminal activity is located therein, and where exigent circumstances exist." United States v. Hepperle, 810 F.2d 836, 840 (8th Cir.1987) (citations omitted). Exigent circumstances generally exist when the delay in obtaining a warrant is overruled by the need for immediate action. See United States v. Bozada, 473 F.2d 389, 391 (8th Cir.1973) ("A pressing need for a prompt search must be reasonably apparent.") The law is clear that the search of defendant's vehicle after his arrest is permissible both as a search of the passenger compartment incident to the arrest, see New York v. Belton, 453 U.S. 454, 460 (1981), and as a more thorough inventory search of the car's contents. United States v. Patterson, 140 F.3d 767, 773 (8th Cir. 1998). An officer may conduct a protective search of a vehicle if he has a reasonable belief that the suspect might be dangerous; the test for reasonableness is an objective one. United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990).

Having carefully reviewed the evidence, the Court finds that because there was probable cause to believe that defendant's vehicle contained contraband or evidence of criminal activity, the officers could lawfully search the vehicle without a warrant. Defendant objects to the instant search in part because he had been removed from the vehicle. The law is clear, however, that a police officer's subjective motivation is irrelevant to the objective reasonableness analysis. Based on the circumstances of this case, the Court finds that Agent Wymer's search of the vehicle for weapons

7

and hidden occupants was objectively reasonable. During the officer's initial cursory search, he discovered the police scanner that was turned on in plain view on the floorboard. This further supported his warrantless search of other items in the vehicle under the "automobile exception" to the Fourth Amendment's warrant requirement. United States v. Rowland, 341 F.3d 774, 784 (8th Cir. 2003)(noting that the exception applies where police officers have probable cause to believe a vehicle contains contraband or other evidence of a crime before they search). The officer's more thorough search of defendant's vehicle and containers contained therein also constituted a valid search incident to arrest. See United States v. Plummer 409 F.3d 906, 908-10 (8th Cir. 2005).

Under the totality of the circumstances in this case, the officer had probable cause to justify the initial search of the vehicle at the scene. Information available to the officers at the time included the fact that defendant was involved in methamphetamine distribution with other individuals; he was present at the scene to purchase methamphetamine; and the expectation was that money would be exchanged for methamphetamine during that transaction. The officers also had information that defendant was likely in possession of weapons. The Court finds that, given the information available, the officer's actions were reasonable. Agent Wymer's credible testimony indicates that the search was limited in scope at the scene, and was conducted because of the officer's belief that there might be weapons or other individuals in the vehicle. The search was continued at defendant's residence because of the need to have the vehicle off the road and in a secure location. Further, the time period that elapsed, twenty-five to thirty minutes, was not unreasonable under the circumstances. The fact that the officer examined defendant's internal phone book in his cell phone was likewise not unreasonable, given the fact that the drug transaction that was to occur was initiated by cell phone calls. Further, the officer credibly explained his concern

8

that the numbers currently listed might be deleted as more calls came in, as well as his concern that the battery might die. The Court finds that there were exigent circumstances that justified the officer's actions regarding defendant's cell phone. Accordingly, based on the foregoing, the Court finds that it must be recommended that defendant's Motion to Suppress Evidence Seized in Warrantless Vehicle Search be denied.

Turning to defendant's Motion to Suppress Evidence, the law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Gates, 462 U.S. at 238. Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. Probable cause may be based on hearsay from a reliable source, and anonymous information that can be independently corroborated may form a probable cause basis. Id. at 244-45. "When we review the sufficiency of an affidavit supporting a search warrant, great deference is accorded the issuing judicial officer." U.S. v. Fulgham, 143 F.3d 399, 400-01 (8th Cir. 1998) (citation omitted).

Defendant contends that the search warrant for his residence was not supported by probable cause because Fujan was not fully honest regarding the statements Agent Wymer included in the affidavit. He further contends that there are unspecified dates and times noted in the affidavit, and

9

that all of the drug transactions were not fully delineated, which were material omissions because this would call into question the premise of how much methamphetamine was involved. He asserts that the transcribed telephone call between Fujan and Harris does not contain statements that actually reference the purchase of methamphetamine or the exchange of money for drugs, and that he was not mentioned. He also questions, among other things, statements regarding the location where transactions occurred, how much was paid for various amounts of methamphetamine, and how much was purchased. Defendant's position is that the affidavit contained a number of misstatements and omissions that were known by the affiant and other DEA officers; that these false statements were more than reckless; and that based on the deficiencies in the affidavit, there was an absence of good faith on the part of the officers.

Initially, the Court notes that defendant has undertaken a hyper technical analysis of the affidavit, and that this approach is disfavored under the law. United States v. Goodson, 165 F.3d 610, 613 (8th Cir. 1999). The affidavit includes statements made by Fujan after he was arrested, which include references to "C.B." or "Clint" as the silent partner or money man behind various methamphetamine transactions. [Affidavit at 4]. Fujan also provided information that drug transactions occurred close to the money man's residence, and that the residence was a location where drug transactions occurred. The affiant accompanied Fujan to this residence, and Missouri Department of Revenue records indicated the residence to be defendant's. Agent Wymer further stated in the affidavit that an intelligence inquiry was conducted with the Missouri State Highway Patrol, COMET Drug Task Force, and the Greene County Sheriff's Department. The inquiry revealed several intelligence reports that indicated that defendant was a major methamphetamine distributor, that he was in possession of firearms, and that he was a source of methamphetamine for

10

several individuals involved in methamphetamine in the area. The information had been ongoing for the last two years. A Missouri State Highway Patrol officer drove by the residence said to be defendant's, and corroborated the information provided that described the residence and vehicles around it. Further, the affidavit includes information regarding a controlled drug buy between Fujan and Harris. After Harris was arrested, he told the officers that the methamphetamine was suppose to be delivered to defendant.

Having carefully reviewed the affidavit, and the evidence adduced at the hearing, and based on the totality of the information known by the law enforcement officers, the Court finds that there was adequate investigation and corroboration of the information provided by Fujan and Harris to establish that the information they provided was reliable. Whether Fujan may have been evasive and less than forthcoming at the first interview is outweighed by the fact that independent investigation by a host of law enforcement agencies over a lengthy period of time implicated defendant in methamphetamine distribution. Further, there was independent corroboration of the fact that the residence referred to by various sources was, in fact, defendant's residence.

Regarding defendant's contention that the affidavit in support of the search warrant is fatally flawed because of material omissions and misstatements, the Court finds that the details about which defendant complains were not material and did not necessarily taint the information that was included. There is nothing to suggest that Agent Wymer acted with reckless disregard for the truth or deliberately omitted essential, material information.

After a careful review of the evidence, the Court finds that defendant has failed to establish that Agent Wymer made any statements in the affidavit that were deliberately false, that constituted material omissions, or that were made with a reckless disregard for the truth. The Court is satisfied

that the affidavit, viewed as a whole, established probable cause to search defendant's residence.

Even if that were not the case, however, the Court is of the opinion that the good faith exception enunciated in United States v. Leon, 468 U.S. 897, 922-23 (1984), would apply. The evidence establishes that the officers had an objective, good faith belief that the warrant was valid and based upon probable cause. Accordingly, it must be recommended that defendant's Motion to Suppress Evidence be denied.

Based on the foregoing, the Court finds that it must be recommended that defendant's Motion to Suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion To Suppress Evidence Seized in Warrantless Vehicle Search and Motion to Suppress Evidence be denied.

    /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:  8/12/05