IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 04-03056-05-CR-S-RED |
| | ) | |
| CLINT BALL, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Now before the Court is the Report and Recommendation (Doc. 196) of the Honorable James C. England, recommending that Defendant Clint Ball's Motion to Suppress Vehicle Search and Motion to Suppress Search of Defendant's Residence be denied. In the motions, Defendant argues that the warrantless search of his vehicle and the search of his home were unlawful and that the evidence seized in these searches should be suppressed.

Specifically, Defendant argues that the warantless search of his car was not made pursuant to a valid exception to the warrant requirement. Defendant further argues that the affidavit upon which the warrant for his home was issued did not provide a substantial basis for finding probable cause that evidence of a crime was then at the residence to be searched. United States Magistrate James C. England held a hearing on the Motions at which Drug Enforcement Administration Special Agent Richard Wymer submitted an affidavit and gave testimony. Thereafter, Judge England issued his Report and Recommendation, recommending that both of Defendant's Motions be denied. Defendant has filed Objections to the Report and Recommendation, arguing that the Magistrate's opinion was based upon theories not argued by the Government, that the search was not a search incident to a lawful arrest as it was not contemporaneous, and that the search warrant issued upon

Defendant's residence did not have a substantial basis for a finding of probable cause. Upon a *de novo* review of the record, *see* 28 U.S.C. § 636(b), the Court **ADOPTS** the Magistrate's Report and Recommendation.

*Standard of Review*

A district court judge may designate a magistrate judge to submit to the court proposed findings of fact and recommendations for the disposition of a motion to suppress evidence in a criminal case. 28 U.S.C. § 636(b)(1)(A) & (B). If a party objects to the magistrate judge's findings and recommendations, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court judge "may accept, reject, or modify, in whole or part," the remaining portions of the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *see Campbell v. United States District Court*, 501 F.2d 196, 201 (9th Cir. 1974), *cert. denied*, 419 U.S. 879 (1974).

*Search of Defendant's Vehicle*

The Report and Recommendations of the Magistrate Judge appropriately sets forth the facts as alleged by the government and the defense through their briefs and testimony. As such, the facts will only be recounted herein as necessary. Defendant argues that evidence seized from his vehicle, including a cell phone, police scanner, and a small plastic container and a further search of the contents of the cell phone and container should be suppressed as the evidence was seized without a warrant or an exception to the warrant requirement.[1]

---

[1] Defendant appears to take issue in his Opposition to the Report and Recommendations of the Magistrate that the Magistrate denied the Motions to Suppress on grounds found in the Government's response and on grounds not articulated by the government in their briefing.

The Defendant objects to the search, in part, due to the way the search was conducted. An initial search of the vehicle occurred at the scene. During this initial search the cell phone, scanner, and container were collected and placed in the passenger area. The vehicle, a van, was also searched for weapons and any persons who may be hiding under the seats. Additionally, the container was opened and was found to contain a substance which the officer identified as methamphetamine or some other illegal drug.

The "scene" was on a busy roadway, and thus, a more comprehensive search occurred twenty-five to thirty minutes later once the vehicle had been secured at another location. Although in the government's briefing the government only argued that the warrantless search was valid as it was made pursuant to probable cause that the automobile contained contraband or evidence of a crime, at the hearing before the magistrate, the government set forth evidence in support of this theory as well as an alternate theory that the search was incident to a lawful arrest.

The fourth amendment guarantee of the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" is "preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney,* 471 U.S. 386, 390 (1985). In certain circumstances, however, a search may comport with the fourth amendment reasonableness standard even though not conducted pursuant to a warrant. *See id.*

One such exemption to the warrant requirement is the so-called "automobile exception,"

---

However, the court notes that the evidence put on by the government, specifically the credible testimony of Agent Wymer, supports a theory of both a search based upon probable cause to the vehicle and its contents and a search incident to arrest. Thus, even though the government may not have specifically argued these grounds in briefs, the government may have met its burden of proof on these issues.

which allows a police officer who has lawfully made a roadside stop of an automobile to search that vehicle without a warrant if probable cause exists to believe that contraband or evidence of criminal activity is located inside. *See, e.g., Chambers v. Maroney,* 399 U.S. 42 (1970); *Carroll v. United States,* 267 U.S. 132 (1925). This exception is recognized because "[t]he mobility of automobiles . . . 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible' " and because " 'the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.' " *Carney,* 471 U.S. at 391 (quoting *South Dakota v. Opperman,* 428 U.S. 364, 367, (1976)).

The scope of this warrantless search may be as extensive as that of a search authorized by a warrant supported by probable cause and "particularly describing the place to be searched." *United States v. Ross,* 456 U.S. 798, 800 (1982). Police may search throughout both the passenger compartment and trunk of the automobile. *See id.* at 825. They may examine the contents of all containers, packages and compartments located in the vehicle, provided that there is probable cause to believe that the object of the search will be found there. *See id.*

Probable cause for an automobile search exists if the facts and circumstances known by the police when they began the search were "sufficient in themselves" for a person "of reasonable caution" to believe that contraband or evidence of criminal activity was in the vehicle. *See Brinegar v. United States,* 338 U.S. 160, 175-76 (1949); *Carroll,* 267 U.S. at 162. Courts do not examine each fact known by the police in isolation, but rather consider "the totality of the circumstances" in determining whether probable cause existed for the search. *See Illinois v. Gates,* 462 U.S. 213, 230 (1983). Courts must also be aware that "a 'trained officer draws inferences and makes deductions ... that might well elude an untrained person,' and evidence collected 'must be seen and weighed not

4

in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " *United States v. Reed,* 882 F.2d 147, 149 (5th Cir.1989) (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)).

The credible testimony of Agent Wymer is that the police, through information supplied by cooperators, independent investigation, and observations of the Defendant, had probable cause to believe that at the time of arrest Defendant was attempting to purchase illegal drugs through a controlled delivery. Persons cooperating with law enforcement called Defendant to set up a delivery of methamphetamine to Defendant at a Wal-Mart Supercenter store on South Glenstone Avenue in Springfield, Missouri. Defendant arrived at the Wal-Mart as set up through the cooperators. However, the delivery was not completed as Defendant and another subject present at the scene were listening to a police scanner and believed they were being watched by law enforcement. The police followed Defendant in his vehicle from the Supercenter location and Defendant was subsequently stopped and arrested.

Not only did law enforcement believe they had stopped Defendant after he had been attempting to buy methamphetamine, law enforcement was also told that Defendant was known to carry weapons upon his person. Moreover, although the Defendant states in his Objection to the Report and Recommendation that "[t]here was no evidence presented by testimony or report that suggested any money was in the defendant's vehicle" at the time of arrest, the opposite is true. During the direct examination of Agent Wymer at the hearing, the United States Attorney specifically asked "did you have any belief that [Defendant's] vehicle or the vehicles operated by him would contain anything relevant to your case?" The Agent answered "we believed that he might have brought money to make the exchange." This belief was based in part on Agent Wymer's

5

training and experience with the DEA, which led him to believe that if drugs were being exchanged, money would also be exchanged.

Clearly, at the time of arrest the officers through the use of the cooperators, independent investigation, and observations of the Defendant had probable cause to believe that the vehicle would contain evidence of crimes. This probable cause extended to the container and the cell phone as they were likely places for the evidence of crimes or contraband to be found. *See Ross* at 825.

As the search was supported by probable cause, the United States Supreme Court has made it abundantly clear that neither the passage of several hours between the arrest and the search nor the immobilization of the vehicle by placing it in police custody invalidates the probable cause basis for conducting a warrantless automobile search. *See, Florida v. Meyers,* 466 U.S. 380 (1984); *United States v. Johns,* 469 U.S. 478 (1985) (finding that packages seized from the Defendant's trunk but not searched until three days later was a permissible delay and valid warrantless search as the items could have been searched at the time of the automobile search as the automobile search was based on probable cause which extended to the packages). Thus, as the officers had probable cause that evidence of crimes or contraband would be found in the cell phone's phone book and the container located in the car, there was no Fourth Amendment violation by these warrantless searches.

Defendant contends that the Magistrate erred in his Report and Recommendation by also relying on evidence presented at the hearing which supported that the search of Defendant's vehicle as also a valid search incident to arrest. It is well settled that a search incident to arrest must be contemporaneous with the arrest. However, the Eighth Circuit has made clear that a contemporaneous search can still involve a delay. "We have many times held, as have other courts, that a search and seizure do not necessarily have to be accomplished precisely and immediately upon

6

Case 6:04-cr-03056-RED   Document 212   Filed 10/17/05   Page 6 of 12

the arrest of the accused or precisely at the scene of the arrest to be incidental to the arrest." *Leffler v. United States*, 409 F.2d 44, 48 (8th Cir. 1969) (citing cases). In *United States v. Wells*, the Eighth Circuit noted that a lawful search incident to arrest needed to follow "hard upon the heels of the arrest." *United States v. Wells*, 347 F.3d 280 (8th Cir. 2003).

The magistrate found that given the totality of the circumstances in this case, the search of the vehicle was sufficiently contemporaneous with the arrest. Upon a de novo review, this court agrees with the magistrate. Defendant's vehicle was simply moved to a safe and secure location where the search law enforcement had initiated immediately after the arrest of the Defendant was continued. In *Leffler*, the car was moved to the police station where the search was continued due to traffic and weather. *Leffler*, 409 F.2d at 48. Similarly, the evidence submitted at the hearing was that Defendant's vehicle was moved due to the busy street where the stop was made, among other safety factors. Thus, under these facts the search of Defendant's car was sufficiently contemporaneous with the arrest and was a valid search incident to arrest.

The Court also notes that the search of the container was made at the scene, according to Agent Wymer's credible testimony. Certainly, this search qualifies as a search incident to arrest under the facts of this case. Moreover, the fruit of this search – the methamphetamine or other drug, especially when coupled with the observation of the attempted drug transaction at the Wal-Mart parking lot, and the officer's knowledge of the use of cellular phones in drug sales easily could lead to probable cause to search the cell phone once the vehicle was secured at another location. *United States v. Patterson*, 140 F.3d 767, 773 (8th Cir. 1998)(finding that the evidence found during search incident to arrest coupled with law enforcement's knowledge of the circumstances of the defendant's stop could lead to probable cause for further search). Accordingly, the Defendant's Motion to

7

Suppress the vehicle search is due to be denied.

### *Search of Defendant's Residence*

Defendant also objects to the search of his residence on the grounds that the single affidavit upon which the warrant was based did not provide a substantial basis for finding probable cause that evidence of a crime was then at the residence to be searched.

A search warrant is proper (*i.e.,* is supported by probable cause) if "the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence." *United States v. Humphrey,* 140 F.3d 762, 764 (8th Cir.1998). Before a warrant may properly be issued, there must be evidence of a nexus between the contraband and the place to be searched. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). When construing the validity of a search warrant, the Eighth Circuit has permitted logical and reasonable inferences based on the evidence. See *United States v. Carpenter*, 341 F.3d 666, 671-72 (8th Cir.2003) (finding it not unreasonable for an officer to infer contraband would be found at residence even though affidavit failed to present facts to indicate existence of a nexus between the residence and the suspected contraband); *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000) (noting judges may draw reasonable inferences in determining whether probable cause exists and law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant).

Direct evidence linking a crime to the location to be searched is not required to support a search warrant. *United States v. Whitner,* 219 F.3d 289, 297-98 (3d Cir.2000). In the case of drug dealers, several courts have held it is reasonable to conclude evidence of the drug trade is likely to be found in a dealer's residence. *Carpenter,* 341 F.3d at 671-72; *Whitner*, 219 F.3d at 297-98; *United States v. Feliz,* 182 F.3d 82, 87-88 (1st Cir.1999), *cert. denied, United States v. McClellan,* 165 F.3d

8

535, 546 (7th Cir.1999), *cert. denied,* 526 U.S. 1125; *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993); *United States v. Davidson,* 936 F.2d 856, 859-60 (6th Cir.1991); *United States v. Angulo-Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986). An officer's experienced observations can be a logical element linking contraband to the residence of an identified criminal. *See Luloff,* 15 F.3d at 768 (stating observations of drug trafficking along with officer's statement in affidavit that drug dealers often store evidence in their residences provided probable cause for search of dealer's house); *United States v. Benevento*, 836 F.2d 60, 70-71 (2d Cir.1987), *cert. denied,* 486 U.S. 1043 (noting a government agent's expert opinion, such as an averment that drug traffickers often keep drug related evidence in their homes, is an important factor to be considered by the judge when making a probable cause determination). Even if an affidavit for a search warrant contains improper material, the warrant is valid so long as the remaining content of the affidavit suffices to provide probable cause. *See United States v. Smith,* 266 F.3d 902, 905 (8th Cir. 2001).

In this case Defendant has delineated what he perceives to be several omissions or misstatements in Agent Wymer's affidavit and application for a search warrant. Defendant's main concern appears to be with persons who cooperated with law enforcement and gave information regarding Defendant's involvement. Defendant states that neither of these persons were shown in the affidavit to have ever been in or at the residence to be searched and likewise had no personal knowledge of contraband or any evidence of crime at Defendant's residence. Additionally, Defendant asserts that the warrant fails to particularly state the objects to be seized as part of the search, but rather gives a "laundry list" of items.

The Court finds that any misstatements or omissions which may exist in the affidavit have not been proven by a preponderance of the evidence to have been made either deliberately or with

9

reckless disregard for the truth. *See Delaware v. Franks*, 438 U.S. 154 (1978); *see also United States v. Miller*, 753 F.2d 1475 (9th Cir. 1985) (holding that a statement is not false under *Franks* if it was made through negligence or innocent mistake). Rather, any statements in the affidavit which may rise to the level of a misstatement or omission were simply not material.

The affidavit by Agent Wymer in paragraph 5 states that Eric Fujan, a later cooperator with law enforcement, was stopped for a traffic violation and was found to be carrying approximately two pounds (2 lbs.) of methamphetamine. Defendant argues this is a material misstatement to mislead the judge as to the veracity of Fujan's later statements as a cooperator since Fujan was actually carrying two and a half pounds (2.5 lbs.) at the time of his traffic stop. Defendant's other examples of misstatements include the omission in the affidavit of the fact that at the time of Fujan's traffic stop, Fujan was also carrying approximately six-thousand dollars ($6,000.00) in cash. Agent Wymer stated at the hearing that he did not feel the money amount was relevant to the warrant application.

Additionally, the Defendant asserts that interviews with Fujan had to be discontinued because Fujan was being "evasive and less than honest." However, the evidence produced at the hearing was that Fujan was high on methamphetamine at the time of his initial interview, and as a result was not making much sense. Agent Wymer specifically stated that he was not told at the time of writing the affidavit and application for a warrant that interviews with Fujan had been discontinued because Fujan was being "less than honest" or "evasive."

Clearly, if these items rise to the level of "omissions" or "misstatements" they were not made deliberately or with a disregard for the truth as Defendant asserts. Rather, the affidavit for the warrant application demonstrated probable cause for the search. This includes statements made by Fujan referencing "Clint" or "CB" as the "moneyman" or silent partner behind several

10

methamphetamine transactions. Moreover, the affidavit clearly shows that this information had been corroborated through an intelligence inquiry with Missouri State Highway Patrol, COMET Drug Task Force, and the Greene County Sheriff's Department. All of these law enforcement entities confirmed that Defendant was a major methamphetamine distributor, that he was known to carry firearms, and that he was a source of methamphetamine for several individuals. The affidavit also stated that this information had been gathered over the last two years.

Fujan drove law enforcement officials by the residence for which the warrant was applied for and later investigation confirmed that the residence was Defendant's. Although the affidavit does not state that Fujan specifically identified the residence as Defendant's, to require such would be to take a "hyper-technical" analysis of the affidavit, an approach which is disfavored under law. *United States v. Goodson*, 165 F.3d 610, 613 (8th Cir. 1999). Clearly, it can be permissibly inferred from the affidavit that Fujan was identifying the residence as the place where drug transactions occurred.

The affidavit coupled with the evidence from the hearing and the totality of the information known to the law enforcement personnel demonstrates that there was an adequate investigation and corroboration of the information they were given to support using this information in the affidavit. As a whole, the affidavit established probable cause to search Defendant's residence. The court also agrees with the magistrate that even if this were not the case, the good faith exception noted in *United States v. Leon*, 468 U.S. 897, 922-23 (1984) is applicable to this case. *Leon* states that if the officers had an objective, good faith belief that the warrant was valid and based on probable cause, then the warrant is valid. According to the evidence, the officers had this belief and the Defendant's Motion to Suppress Evidence is due to be denied.

11

*Conclusion*

Accordingly, upon a *de novo* review of the record, the Court **ADOPTS IN FULL** the Report and Recommendation (Doc. 196) of the Honorable James C. England. For the reasons stated in the Report and Recommendation and for the reasons stated herein, it is hereby

**ORDERED** that Defendant, Clint Ball's Motion to Suppress (119) and Motion to Suppress (120) are hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant, Clint Ball's Objections to the Report and Recommendations (Doc. 206) are hereby **OVERRULED**.

**IT IS SO ORDERED.**

DATE:  October 14, 2005  */s/ Richard E. Dorr*
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT