**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case 04-03056-05-CR-S-RED |
| | ) | |
| **CLINT BALL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court are the Report and Recommendation of United States Magistrate Judge (Doc. 387) dated December 9, 2010 and Defendant's Objections to U.S. Magistrate's Report and Recommendation (Doc. 388) dated December 27, 2010. This matter is before the Court upon remand by the Eighth Circuit directing the Court to "analyze the suppression issues in light of Gant,[1] and for a further evidentiary hearing, if the district court deems such a hearing is necessary." *United States v. Ball*, 334 F. App'x 44, 45 (8th Cir. 2009).

The issue is whether the search of Defendant Clint Ball's ("Defendant") vehicle was a valid search incident to Defendant's arrest, in light of the recent United States Supreme Court opinion *Arizona v. Gant*, 129 S. Ct. 1710 (2009). Pursuant to *Gant*, a law enforcement officer may search the passenger compartment of a vehicle incident to the defendant's arrest when the defendant is "within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id*. at 1723.

The relevant facts to the suppression issues are as follows: Defendant and others were under investigation for methamphetamine distribution. One of the conspirators involved with

---

[1] *Arizona v. Gant*, 129 S. Ct. 1710 (2009).

Defendant, John Harris ("Harris"), was arrested and following his arrest, agreed to cooperate with law enforcement officials. Based on their investigation and the information provided by Harris, the Drug Enforcement Administration ("DEA") obtained authority to search Defendant's home and any vehicles located on the premises. At the same time, Harris, cooperating with law enforcement officials, set up a meeting with Defendant in a Wal-Mart parking lot for the ostensible purpose of delivering two pounds of methamphetamine to Defendant. Defendant appeared at the parking lot, pulled his van alongside Harris' vehicle, but then was advised by another individual who was listening to a police scanner that law enforcement officials were onto the deal. Defendant immediately drove away "at a high rate of speed," but was eventually stopped and arrested. Special Agent Richard Wymer ("Wymer") with the DEA testified he believed that Defendant's vehicle possibly had $30,000 to pay for the two pounds of methamphetamine. Defendant did not specifically say on the phone that he would have money for the drugs, but Wymer knew from prior conversations they had listened to that no one said money or drugs when discussing a sale, they used other terms. Wymer also testified that based on his experience when one person brings drugs to a deal, the other person brings money.

It would appear that the search at issue occurred when Wymer first entered Defendant's van after Defendant was stopped. The record is not clear as to Defendant's location at this time, but it seems to be a fair inference that he was under arrest and physically located away from his van. Wymer described the search of the van noting that the vehicle had been stopped abruptly, he got into the van to drive it out of the middle of the street, he was dealing with a situation where they had a subject (Defendant) who believed he was about to take possession of two pounds of methamphetamine, they had information the subject had weapons at his house and

2

might carry weapons on him, and he made a quick search of the front passenger compartment, the backseat and cargo area to be sure there was not a weapon or someone else in the vehicle because he was not going to get in the front seat of a van and drive it off the street without knowing this. When Wymer got into the van to drive it off the street he saw and heard the scanner and saw a small capsule like container and a cell phone on "the floorboard of the passenger compartment on the driver's side. The vehicle was in the middle of Glenstone, and I had to get these items out of the floorboard in order for me to drive the vehicle off of the main road." (Trial Tr. p. 345 l. 19 - p. 346 l. 4). Wymer opened up the container and saw a substance that looked like methamphetamine or drugs. He placed all three items on the passenger seat before driving off in the van. After he arrived at Defendant's house, Wymer searched the data in the cell phone. A complete search of the van was conducted at the house, but no additional items of interest were found.

The search of Defendant's vehicle is a constitutional search incident to arrest if it was reasonable to believe Defendant's vehicle "contained evidence of the offense of arrest." *Gant*, 129 S. Ct. at 1723. Defendant's objections to the Report and Recommendation concern the reasonable belief of Wymer, the law enforcement officer who searched Defendant's vehicle. Defendant argues that the evidence in the record demonstrates that Wymer did not have a reasonable belief that drugs and money to pay for drugs would be in the vehicle. Defendant supports his argument with Harris' testimony at trial, where Harris testified that he did not expect Defendant to bring methamphetamine or money to the parking lot, and additionally, that Harris never told Wymer that Defendant would bring money.

It is clear to the Court that it was reasonable for Wymer to believe Defendant's vehicle

3

would contain evidence of Defendant's arrest concerning distribution of methamphetamine. Defendant was under investigation by the DEA for his involvement in a conspiracy to distribute methamphetamine. Before the controlled exchange took place in the parking lot, Wymer was executing a search warrant to search Defendant's home for evidence of methamphetamine distribution. Regardless of whether Harris told Wymer that Defendant would have methamphetamine or money at the controlled exchange it was reasonable for Wymer to believe, as he stated at the suppression hearing, that Defendant would have money with him to purchase the methamphetamine. Furthermore, Defendant was arrested after he attempted to leave the scene of a controlled drug transaction. Although not necessary to support the authority for the search, it appears that the items in question were in plain view of Wymer when he got into the car to move it to a safe location.

Finally, the Court notes that the facts in *Gant* are clearly distinguishable from the facts of this case. In *Gant*, the defendant was arrested for driving with a suspended license and the unlawful search incident to arrest revealed a gun and a bag of cocaine in the defendant's vehicle. *Gant*, 129 S. Ct. at 1715. The Supreme Court determined that the officers could not have expected to find evidence concerning the offense of Gant's arrest in the vehicle. *Id*. at 1719. Contrary to *Gant*, law enforcement officers in this case had every reason to expect to find evidence relating to Defendant's arrest. Defendant was a known drug dealer, search authority had already been obtained for his house, and the search in question was incident to Defendant's arrest after he fled the scene of a controlled drug transaction.

After careful and independent review of the parties' briefing on the suppression issues and the Report and Recommendation, this Court agrees with and **ADOPTS** the Report and

4

Recommendation of United States Magistrate Judge in full. The Court also finds that it is not necessary to hold an evidentiary hearing over the suppression issues.

**IT IS SO ORDERED.**

DATE: January 13, 2011              /s/ Richard E. Dorr
                                    RICHARD E. DORR, JUDGE
                                    UNITED STATES DISTRICT COURT